May it please the Court, David Cooper on behalf of the appellants, I'd like to reserve three minutes for rebuttal. This case concerns an arbitration in China that produced an award against the appellants, but appellants did not participate in that arbitration because they never received notice of its existence and did not agree to arbitrate in the first place. The District Court nonetheless confirmed the foreign arbitration award on two grounds. First, the Court held that the Arbitration Commission provided constructive notice by sending mail even though that mail was returned as undelivered. Second, the Court held that a party waives its right to argue that it never signed the arbitration agreement if it does not attend the arbitration. Both of those grounds are wrong as a matter of law. If the second ground, if we agree with you on the second ground, do we have to reach the notice question? So we believe this Court should reach the notice question even if it agrees with us on the second ground for this reason. If this Court agrees with us on the second ground, there would have to be a remand for fact-finding on the question of whether or not there was a forgery or not because the District Court did not reach that question. So that would be a remand for that issue. Whereas the notice issue, then, would still be fair game, let's say, on remand. And it would, I think, benefit both the parties and the Court to know whether or not that was providing an independent grounds for reversal, one that would not necessarily even require a remand, but just a straight reversal that would make a remand on the agreement issue unnecessary. But the notice issue is a much more difficult question, in my view. So wouldn't it be better for us to be able to review that question after considering both issues together after the remand? This Court certainly could do so. But, again, we think that even if notice is potentially a more difficult issue, there are – it would benefit the parties because, as opposed to a remand, it could obviate the need for further proceedings if this Court found that notice was insufficient. Well, if indeed there was a forgery and no agreement, then notice passes out of the picture.  So it's only if you lose on the forgery issue that it matters. That is true, yes. But I think, again, it's within this Court's discretion. Our position is it would only be that we don't know what the remand proceedings will produce, and rather than have a potential of a second appeal where we'd be arguing the same notice issue again, we think it would be more efficient and potentially preclude the further proceedings being more efficient for the district court if this was a notice issue as well. As I understand it, Counsel, the district court did not reach a conclusion about whether your clients might have received actual notice through the corporate parties. Is that right? That is true, yes. There were some findings that are relevant to that question, but no reliance upon that. Would that be a question that would require further evidentiary hearing or appropriate to resolve, if necessary, on the existing record? So we would suggest two things. First, we think it could be decided on the existing record and the simple fact that they have the obligation to provide evidence of notice. When they made their petition to confirm the award, what they said is, we provided notice by mail to the appellants. Then our opposition said, our clients never received any mail. Their response in reply was, well, but then they got they got constructed notice.  They got constructive notice. So the point that they argued actual notice as well as constructive notice. Am I wrong about that? So what they argued is effectively that because of the relationship between the appellants and parties who did receive notice, like Fucon, who participated in the arbitration they knew of the arbitration, that effectively they should be treated as it. Now, whether or not that's actual or constructive, I think in some respects they conflate the two things. But the point is, there is no evidence, none, that they actually received notice. That is, that they knew in some way from someone about the arbitration. And their sworn declarations say unequivocally that they never received notice from anybody. So who bears the burden of demonstrating that there was an adequate form of notice once the issue is raised? So I don't think that the law is clear on who bears the burden, but — I didn't think so, either. That's why I asked. It may matter to the outcome on that question. So our position would be this. We can do nothing more in this kind of situation than put forth a sworn declaration under penalty of perjury saying that we never received notice. There's literally nothing more that we can do to — Well, that doesn't answer the question about whether, you know, what the relationship is between your client and the other entities who did receive notice. And so it's true as far as it goes, but it doesn't answer all the questions in this case as I understand it. So I think as far as the other entities, our answer would be this. If those other entities had informed our clients, that should be very, very simple to show from an evidentiary perspective. They can show that Fukong emailed the appellants. They can show that Fukong knew where the appellants were and mailed them. They can show that Fukong was in some kind of contact with the appellants during this time period. They produce none of that evidence, none of it in the arbitration, none of it before the district court, none of it in any way whatsoever. But you had the opportunity also to produce evidence saying we never contacted them, we didn't email them or phone them or have — we kept them completely in the dark about the existence of this arbitration. So both parties had access to the potential evidence on the question. Well, I don't think we had the same opportunity because they only raised this issue in their reply brief. So that was the very first time they said a notice should be imputed through these third parties. So — Well, on the burden question, though, you were suggesting that only they could have produced this evidence, and that doesn't strike me as correct. Well, I think it would be much more difficult for us to try to contact these third parties in China to actually get them to produce some sort of evidence. But I think the bigger point is we're proving a negative. We're suggesting that the evidence does not exist. There is no evidence of an email or a phone call. The district court found that your client was the sole director and shareholder of the two corporations. Why is that not enough? So the district courts did say that, quoting their petition. But the fact that — like, we obviously disagree with that. So why wouldn't you want to go remand and figure all those facts out before we have to decide those questions? I'm sorry. Why wouldn't you — Why wouldn't you support a remand on the notice question so then we could figure out whether or not that Mr. Yang is the sole director and shareholder of the two corporate entities? So, again, this Court could remand. But I think the remand would be not to decide whether or not he was a sole director and shareholder, but whether or not there was notice. And I think — and I think it's an important distinction. But isn't that — I mean, if he's the sole director and shareholder, couldn't we impute the notice, which is what the argument that your friends are making? No. I don't — I don't think so. And I'll explain — I'll explain why. So there are two kinds of notice, actual notice and constructive notice. If we're talking about constructive notice, constructive notice has to be based on a reasonable attempt to contact the individual, the person or entity, if it's a corporate party, that is part of the arbitration. Here, there was none, aside from a mail that was returned. And your briefing suggests that they should contact his associates in China? So what our brief said — so, again, I think this is part of the difficulty because there's actual constructive notice. Yeah. From an — from an actual notice perspective, if they had — I'm sorry. From a constructive notice perspective, our point is the mailing wasn't enough. They said, what more could we have done? And we say, well, if you actually believe that Fu Kang and these other entities were in some kind of contact with appellants, then just ask them. Ask them where he is. Ask them to contact him. Do something along those lines. And there's no evidence of any kind that they ever did so, that the Arbitration Commission asked them to do so, that the third parties had any contact with appellants during this time period. So our point is this. Regardless of what we consider sort of the formal legal status of the appellants as compared to the third parties, they are entitled to notice. Just as an individual who is a director of a company, if that individual is a defendant in a litigation or arbitration, is entitled to service, is entitled to notice, and whether or not that corporate party is served and notified does not suffice. And here it did not suffice to say, well, we're served Fu Kang, when the Arbitration Commission recognized that appellants did not — did not participate in the arbitration. Fu Kang was not representing them in the arbitration. Excuse me. I want to just make sure I'm understanding a basic point here. As I understand it, the mail delivery to the last known reported — officially reported address in China would be deemed sufficient notice under Chinese law. Is that right? Under the Chinese arbitration rules, yes. Okay. Yeah. Yes. And so then the question here is — involves applying American due process standards under the convention, right? Correct.  But there's also, at least from my experience, there's a fair amount of kind of practical — a practical dimension when we start worrying about actual knowledge. And I'm also wondering whether maybe some further fact-finding on the notice question would be necessary to resolve it with a higher degree of confidence. I understand your point that there doesn't seem to be — have been anything done. Getting the undeliverable mail sufficient for Chinese law, maybe not for American, so. So, yes, under — as far as the legal issue, that's correct. Not sufficient under American law because the New York Convention defines what is required for enforcement of a foreign arbitration award. It says proper notice. That has been defined in terms of U.S. constitutional requirements. As far as the remand, again, we recognize it's absolutely within this Court's discretion to do so if it believes there is an open question on the actual — That's my question. Why would we interpret proper notice to mean constitutional requirements? So — I know there's a Tenth Circuit case that says that, but that's not binding, and I don't understand why we would do that. So I think the reason why is twofold. One, and this comes from a Ninth Circuit case called Glencore, this idea that if we don't incorporate these kinds of due process limitations when enforcing a foreign arbitration award, there becomes a constitutional question of whether or not that itself would comport with due process, and we're trying to avoid that kind of constitutional question. I think the second — I think the second point — There's a constitutional avoidance canon? I believe that's — I believe that's part of the reasoning, and part of the reason this Court is — So there's a Supreme Court case going on right now that will determine the due process rights of foreign nations and foreign corporations, so — Yeah. Right. And to be clear, of course, appellants are legal residents in the United States, and these kinds of notice rules would apply regardless of whether, you know, someone's foreign status. It depends only on the existence of a foreign arbitration award. And the second reason, I think, goes to that, which is we have a firm understanding of what notice means in the U.S. constitutional context. To invent a new concept of notice, you know, in terms of what it would mean in this context, I think would be unnecessary and, you know, and duly complicated. It would seem odd that we would entitle — we would review foreign arbitration awards under a due process lens. I mean, the whole point of that convention is to show commodity to those other countries, and having a heightened standard like due process seems like a counter to that. So I think — well, I think part of the New York Convention is respecting the way that foreign arbitrations are conducted, but part of it — and there are several different defenses that deal with the fact that it also is about applying domestic law in addition to foreign law. So there are several defenses that deal with the application of domestic law in addition to foreign law. And so it's not foreign to the convention, the idea that you would apply a domestic standard even within the context of confirming a foreign arbitration. MR. RUBENSTEIN, JR.: Two minutes and 20 seconds. Do you want to reserve the rest for your rebuttal? MR. WOLFSON, JR.: If I can, yes, Your Honor. MS. WOLFSON, JR.: Good morning, and may it please the Court, I'm Caitlin Walsh here on behalf of Apelli Zontai. The Supreme Court has recognized —  WOLFSON, JR.: Raise the microphone a little bit.  WOLFSON, JR.: Sorry.  WOLFSON, JR.: Thank you.  WOLFSON, JR.: The Supreme Court has recognized the emphatic federal policy in favor of arbitral dispute resolution, which is even stronger in the context of international arbitration awards. That policy is embodied in the New York Convention, which provides that the Court shall confirm a foreign arbitral award unless the Respondents show, prove one of the narrowly construed exceptions to enforcement under Article V of the New York Convention. Although appellants assert two defenses, only one is really relevant here, and that is whether they carried their substantial burden to show that they did not receive proper notice of the Chinese arbitration. Sotomayor, is there a Supreme Court or a Ninth Circuit case that defines proper notice within the meaning of Article V, Section 1B of the New York Convention? In other words, does it incorporate more than — it doesn't say proper notice under the law of the contracting state or — I mean, it just says proper notice, and so I'm looking for what that means. WOLFSON, JR.: So I think what's getting confused here is what, Your Honors, we're just discussing a moment ago regarding what law applies to the service that's provided, and that is the laws of the countries where the arbitration takes place. WOLFSON, JR.: Well, it doesn't say that. It just says proper notice. And so it sounds like from the context that it means notice designed to allow the party to present the case, because it says not given proper notice of the appointment of the arbitrator, of the proceeding, or otherwise unable to present the case. So it seems to have a practical — practical import to it, and I don't know if there are no cases otherwise defining proper notice that are binding on us. I'm not sure what to make of that. WOLFSON, JR.: Well, proper notice in this context is the same as what was described in Moulin and Lindley. So the Ninth Circuit decision in Lindley adopted the Moulin standard of — WOLFSON, JR.: Reasonably — WOLFSON, JR.: Right. WOLFSON, JR.: Reasonably calculated under all of the circumstances. So this is a totality of the circumstances review. So it's necessary in this case. And again, it is — WOLFSON, JR.: Why import the due process standard to a statutory standard that just says proper notice? WOLFSON, JR.: That's what the Ninth Circuit did in Lindley. CHIEF JUSTICE ROBERTS, JR.: Under which statute? WOLFSON, JR.: Under the New York Convention. CHIEF JUSTICE ROBERTS, JR.: They applied it? WOLFSON, JR.: Yes. CHIEF JUSTICE ROBERTS, JR.: Oh. WOLFSON, JR.: And in this case, where the Beijing Arbitration Commission mailed notice to the only available address for the appellants inconsistent with its — with the rules of the Arbitration Commission, that was proper notice under the rules. Now, what we have to do is we have to — I accept that that might be sufficient for Chinese law purposes, but your clients have invoked the coercive powers of the United States courts to enforce this under the — American due process seems to require when you get that undeliverable letter back, you have to do something else. What else was done? CHIEF JUSTICE ROBERTS, JR.: So here, it's undisputed that the borrower, Fu Kang, whose debts the appellants guaranteed — that's the same loan that's at issue here — they received actual notice of the arbitration, actively participated in the arbitration. Zong Ji, another of Yan's companies, also received notice and chose not to participate. Now, the borrower admitted — Fu Kang admitted at the arbitration proceeding, and the tribunal found that Yan controlled the borrower at the time of the arbitration. And that's part of the award. It's the section of the award titled, Opinions of the Arbitration Tribunal, Facts About the Case. The district court should not have disturbed this finding. That's consistent with Trafin Intercontinental, which is 2019 U.S. District Lexis 29375, a District of Nevada case, which says that a court is obligated to confirm an arbitration award unless the award is vacated, modified, or corrected, even if the arbitrator made erroneous findings of fact or misinterpretations of fact. Sotomayor, it seems a bit circular, because if the finding of fact about Yan was made without participation, and the lack of participation in turn was made without the notice, it all seems to fold in on itself. It's not as if they said, well, something happened on a Tuesday instead of a Wednesday, where, you know, it wouldn't — you wouldn't disturb that kind of a finding. Well, to be clear, actual notice is not required here. And that's undisputed, that actual notice is not required here. No, no. I was referring — you were wanting to rely on the finding that Yan controlled the borrower, correct? That's what you were — That's a finding of the tribunal, yes. Yes. But it was made without Yan's participation, wasn't it? Yes. Well, okay. That's why I say it seems to fold in on itself, because he may have had contrary evidence that, no, I didn't have anything to do with this borrower. And the finding of fact might have been different. That's why it seems to me to be not dispositive of the notice requirement. And it isn't dispositive. It's a totality of circumstances. Also in the record is that the investigation that was commenced by the Chinese Securities Regulatory Commission in early 2018, less than a week before appellants fled China, ultimately concluded that Yan was in actual — was the actual controller of borrower Fucong for the entire time of the investigation, which spanned from April 2017 through November of 2021, which was more than two years after the arbitration took place. So although the burden is on the appellants here to show that they did not get proper notice, the — all the evidence in the record shows that the commission was in — acted in accordance with the rules by providing notice according to its only available address, its address on the Chinese I.D. card that was not updated when the appellants fled the country. And there was also evidence from multiple sources regarding the fact that the borrower was still controlled by Yan during the arbitration. Under these circumstances, there's nothing offensive to American due process or notions of fundamental rights. You mentioned Lindley was an unpublished opinion, right? And so it's not binding on us. And it had no analysis whatsoever except just asserts — It applied Belain, yeah. Yeah, okay. Can you just give a textual reason why we would say proper notice in the New York Convention should refer to the due process rights? Well, I think it's a little bit more nuanced than that. It's that proper notice needs to be viewed backwards as to whether it offends due process. Yeah, but why? From a textual perspective, proper notice could just mean proper notice. Notice that's proper. Right. Why would we import, you know, minimum context, notions of fair play and equal justice that the statute doesn't say anything about? No, exactly, and I wouldn't. I would just say that the Moulin standard of being reasonably calculated under the totality of the circumstances is sufficient to determine whether proper notice was given. But we could apply that standard without saying that it's constitutionalized. Yes. Yes. And note — I want to point out a case in which notice was found to be proper in a very similar situation, and that's Ma v. Fang. And there the respondent left. This is a Central District of California case. Also not binding on us. Also not binding. But the facts are almost identical. The commission attempted to provide service at the address that was on the respondent's Chinese national ID card. It was not successful. They then tried to attempt — they attempted service on some companies that the respondent was at the helm of, and that was — that service was sufficient. That service was actual — So you said that there's only one issue of notice. But even if we were to agree with you, they could say, what about the fraud issue, the forgery issue? It was — it was waived. So the district court properly found that if the — if the appellants had notice — had proper notice, then they waived the defense of forgery. It's a fundamental thing, though. You only are forced to arbitration if you agree to arbitration? Yes, but the — So if they're saying they never agreed to arbitration, why would they have to be forced — why would they be forced into that proceeding? Appellants had to bring this argument up when they received proper notice of the arbitration. There are — the cases that the appellants cite to say that they are entitled to this forgery defense in advance of the arbitration, they all apply where the — where the Respondents did not receive proper notice. Could you address the — Or they did not waive — Counsel, please. Could you address the Al-Kharkhani case of this circuit on the question of waiver? So in Al-Kharkhani, the Respondents consistently raised the waiver issue throughout the arbitration proceeding. They bailed out of the —  They bailed out of the arbitration proceeding. They appeared. But if I'm — if I'm sitting in the United States and I get a letter that says to me, we're doing this arbitration against you in China, I've never been to China, I've never signed any documents that might support this, do I have to go to China and appear and say you don't have any business arbitrating this dispute over me? Well, respectfully, that's not the situation that we have here. Please answer that question. I think it would need to be analyzed under the entirety of that. Come on, Counsel. If I've never signed a document — I think what you're describing — You cannot make me go to China or New York or Timbuktu for an arbitration, right? And I think what you're referring to, a case that the — that the appellant's site in their opening brief is this Exceed case out of the Southern District of Texas, which was a situation like that. It's an outlier decision, but it's a similar sort of thing. And in that case, the — It is not an outlier with respect to the basic principle that in the United States law and any other law that I'm aware of, you can't be forced to arbitrate an agreement you have not agreed to arbitrate. The question of the authenticity of the written document that you were required to provide to the Arbitration Commission is always at issue. The tribunal found that those documents were valid documents. And — Yes, okay. If that's your answer, I understand it. And, again, Jones v. Flowers does not change any of this analysis either in terms of, you know, the bright-line notice. It does not — it does not create a bright-line rule here. I just don't think the second issue, the forgery issue, has nothing to do with notice. We assume the proper notice, and then the question is, if they're claiming it was all forgery, then do we get to litigate it now, or does it wait, or do they have to go to arbitration? So that doesn't change the burden here, right? So, okay. So say there's proper notice. Of what? The burden of the appellants needing to show that they — to meet their substantial burden to fit into that forgery defense. And here, all that happened was, you know, as — Haven't litigated it yet. They asked the district court to take into account a serve-reply. The district court was in its discretion to decline to take into consideration that serve-reply. All that the appellants put in with that serve-reply was a self-serving declaration that said, I was not — The appellants are self-serving. Otherwise, you wouldn't file them. That is a pointless — a pointless adjective. But there was no other evidence presented. They could have presented evidence that he was no longer at the helm. They could have presented evidence that — to refute the evidence that was provided by the appellee in connection with the opposition, which included a handwriting analysis and a detailed description of, you know, what happened on the day that the loan was executed along with the personal guarantee. That's not how the district court — the district — you're suggesting they waived the facts, but the district court ruled that they waived the whole issue because they didn't participate in the arbitration. Correct. But the district court — If you disagree with that, shouldn't we remand and then all these factual issues can be played out? The district court also noted, though, that she didn't need to address what was in the cert reply. So — Because, you know, what I perceive is a legal error, but — Well, that was in her discretion. That was in the district court's discretion whether or not to take the cert reply. I think what's important to keep in mind here, too, is that, you know, if this court adopts the appellant's strategy here, it would give a roadmap for parties who are, you know, seeking to avoid enforcement of their debts to have their company defend the arbitration in another country, say that they didn't know about it, disappear to another country, and then come back and say, I didn't know about it, and, you know, I didn't — and I didn't even sign the thing. Well, my response would just be that's what the New York — that's the balance that the New York Convention provides. Well, the New York Convention has a very, very strong policy for enforcing. I think that's Your Honor's point, that there's an emphatic Federal policy in favor of confirmation. But there's two exceptions. There's a lack of notice and there's a claim of forgery of some sort. And very narrowly tailored. And, again, the burden of the appellants to fit into those narrowly tailored exceptions. And I think I would just leave the Court with just that, that the — that this Court should please keep in mind that you don't want to undermine the important policy that undermines the New York — that underlies the New York Convention. And not to give parties the opportunity to shirk their responsibilities and then later on say that they had no way of knowing about it or they didn't choose to participate. Thank you, Counsel. Just a few quick points, Your Honor. First, on the notice issue, they agree that the test is reasonably calculated under Mullane. Jones v. Flowers was applying that very same test and reasoned not under some kind of arcane constitutional theory but basic logic that nobody who wanted to actually notify someone of an arbitration after receiving mail that returned as undelivered would do nothing. Yeah, but Jones was a very different situation. You're taking away someone's house, right? And they evicted him. He lived there for 40 years and they evicted him without any proper notice. Here we're just asked whether or not a foreign country has properly implemented their arbitration rules. It seems like a very different context. So I don't know why we would apply Jones v. Flowers. So even though it's a different context, it's been applied in various contexts, including in this Court it's applied to French proceedings. The Second Circuit has applied it to foreign arbitration awards. And that's because the principle is the same. You want to notify the people. And if you actually want to notify them, you wouldn't do nothing after receiving something that says they didn't get the mail that you sent them. The second point is in response to this idea that the Arbitration Commission had a finding that there was control, no. And this is page 322 of the excerpts of record. The Arbitration Commission said that Fu Kang said that there was control, not that it was not a finding. And as Your Honor noted, because we did not participate in the arbitration, any finding on that would not be worth any deference regardless. On the issue of agreement, I also want to make a few quick points. First, this was not just raised in the SIR reply. In the declarations in opposition to the petition, this is pages 226 and 237 of the excerpts of record, the appellants unequivocally stated that they did not – that they did not sign the agreement. So you do not even have to look to the SIR reply to find – to find this evidence that the district court did not evaluate because it found simply that there was a waiver. There was a waiver by not participating. And that violates an absolutely fundamental principle, that if someone does not agree to arbitrate, they cannot be forced to arbitrate. And that is – and that principle is violated by the district court's ruling here, and it requires a remand to determine, which has not been determined, whether or not there was an agreement here. Thank you, Your Honor. Thank you, counsel. This case is submitted.
judges: GRABER, Hamilton, BUMATAY